***FOR PUBLICATION***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEAN M. DONOVAN, | : |
| Plaintiff, | : Civil Action No. 3:21-cv-03707-FLW-LHG |
| v. | : |
| W. R. BERKLEY CORPORATION, BERKLEY INSURANCE COMPANY A/K/A BERKLEY PUBLIC ENTITY, RICHARD STARKIE, AND SCOTT BARRACLOUGH, | : **OPINION** |
| Defendants. | : |

**WOLFSON, Chief Judge:**

Plaintiff Sean M. Donovan ("Plaintiff"), a resident of New York, brings this employment discrimination action under the New Jersey Law Against Discrimination ("NJLAD") against defendants, W. R. Berkley Corporation ("W.R. Berkley"), Berkley Insurance Company a/k/a Berkley Public Entity ("BPE"), a subsidiary of W. R. Berkley, Richard Starkie, Senior Vice President of BPE, and Scott Barraclough, Chief Executive Officer of BPE (collectively "Defendants"), alleging that he suffered retaliation for reporting discriminatory conduct. In the present matter, Defendants move to dismiss Plaintiff's Complaint on the grounds that Plaintiff, an employee of Defendants in New York, has not alleged a sufficient connection to New Jersey to avail himself of the protections of the New Jersey Law Against Discrimination ("NJLAD"). Plaintiff opposes Defendants' motion, and cross-moves for leave to amend his Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2), to assert additional factual allegations connecting his claims to New Jersey. For the reasons set forth herein, Plaintiff's Motion to Amend is **GRANTED**

and Defendants' Motion to Dismiss is **GRANTED**. However, Plaintiff is given leave to file a second amended complaint to cure the deficiencies outlined in this Opinion within 21 days from the date of the accompanying Order.

I. **BACKGROUND**[1]

Plaintiff is a resident of New York and a former employee of BPE. (Am. Compl. ¶ 1.) BPE is a wholly owned subsidiary of W.R. Berkley, which has offices in both New Jersey and New York. (*Id.* ¶ 2.) W.R. Berkley has its headquarters in Connecticut. (*Id.* ¶ 29.) According to Defendants' Notice of Removal, Starkie is a citizen of Florida and Barraclough is a citizen of Pennsylvania. (ECF No. 1, 7–8.)

In 2017, Plaintiff was hired by BPE as a Claims Director. (*Id.* ¶ 6.) Plaintiff began work on May 30, 2017 in BPE's New York office. (*Id.*) While Plaintiff was employed in the New York office, he alleges that he "worked on a semi[-]regular basis" at BPE's offices in Rutherford, Ewing, and Morristown, New Jersey. (*Id.* ¶ 7.) Plaintiff also alleges that he attended work meetings and functions in New Jersey, and would work remotely while traveling through New Jersey to BPE's Philadelphia office via Amtrak. (*Id.* ¶ 8.)

During his employment, Plaintiff alleges that he witnessed and experienced several incidents of discrimination. (*Id.* ¶¶ 11, 15, 19, 31, 34, 38, 45.) For instance, Plaintiff alleges that in May or June 2018, he participated in a Claims Team teleconference with several BPE employees, including Starkie, the Senior Vice President of BPE, and Andrea de Voogd ("Ms. de Voogd"), a Claims Analyst. (*Id.* ¶¶ 10–11.) Plaintiff alleges that Starkie participated in this

---

[1] Because the Court grants Plaintiff's motion to amend the Complaint, *see infra*, the following facts are taken from Plaintiff's Proposed Amended Complaint and taken as true for the purposes of these motions.

teleconference from BPE's office in Rutherford, New Jersey. (*Id.* ¶ 13.) During the conference, Plaintiff alleges that Ms. de Voogd asked a legitimate process question and, in response, "Starkie launched into a loud and abusive tirade [during which] he repeatedly shouted at [Ms.] de Voogd." (*Id.* ¶ 11.) Shortly after the teleconference, Plaintiff reported Starkie's conduct as workplace bullying to then-BPE President, Richard Vincelette ("Vincelette). (*Id.* ¶ 14.) A few weeks later, Plaintiff alleges that Starkie again made discriminatory remarks against Latinx people. (*Id.* ¶ 15.) Specifically, Plaintiff contends that during a teleconference, Starkie made the following racist comments: "the problem with the Labor Law cases is they almost always involve severe injuries because they're guys who fall off of scaffolds or are struck by a falling object . . . they're often minority plaintiff – Latinos . . . they go out on Comp and they never go back . . . and so a million dollars in a Labor Law case." (*Id.* ¶ 19.) Plaintiff once again reported Starkie's remark to Vincelette as he believed Starkie's comment violated W.R. Berkley's code of ethics and business conduct handbook, which states that "[e]ven the perception of discrimination can harm morale. If you know or suspect that discrimination is taking place, report it promptly.". (*Id.* ¶¶ 19–20.) A few months later, Plaintiff settled a liability case involving a Latino male. (*Id.* ¶ 22.) According to Plaintiff, Starkie made a note in the claim file that the large payment was justified, in part, because the plaintiff was a Hispanic male. (*Id.*) Plaintiff reported this statement to his direct manager as he believed it to be discriminatory. (*Id.* ¶ 23.) Plaintiff alleges that his manager edited the discriminatory portion of the note in the system. (*Id.* ¶ 24.)

On March 4, 2019, Plaintiff became aware of another allegedly discriminatory incident that took place at an industry conference against a co-worker who is a South Asian Woman of Indian descent. (*Id.* ¶ 25.) Specifically, a representative of one of BPE's insureds approached Plaintiff's co-worker and "commented on her scarf, and stated that she 'might be mistaken for a terrorist."

(*Id.* ¶ 26.) Barraclough allegedly witnessed this incident and when asked if he would take any action in response, he replied "What am I supposed to say?" (*Id.*) Plaintiff reported this incident to Keefe. (*Id.* ¶ 27.) Plaintiff alleges that his reporting "led to a continuous pattern of harassment against Plaintiff by Defendant Barraclough creating a hostile work environment based on retaliation or retaliatory harassment." (*Id.* ¶ 25.)

Shortly thereafter, Plaintiff applied for an open position as Vice President, Senior Claims Counsel, at W.R. Berkley's headquarters in Connecticut and was interviewed by a member of the Human Resources staff. (*Id.* ¶ 26.) In the months following his interview, Plaintiff attempted to contact the staff member who conducted the interview as to the status of his application, but Plaintiff did not receive any response. (*Id.* ¶ 27.) Eventually, Plaintiff was informed that the position had been filled by another person. (*Id.* ¶ 28.) In September 2019, Plaintiff contacted a Human Resources manager to discuss the lack of communication regarding the status of his application. (*Id.* ¶¶ 28–31.) However, instead of addressing Plaintiff's concerns, the manager allegedly criticized Plaintiff and warned him to watch his behavior. (*Id.* ¶ 31.) According to Plaintiff, this incident became part of a "Final Warning" he received later that year. (*Id.* ¶ 32.)

In September 2019, Plaintiff applied for the position of Senior Vice President, Chief Claims Officer. (*Id.* ¶ 35.) Plaintiff does not indicate where this position would have been located. Plaintiff was interviewed by Barraclough for the position in the Morristown, New Jersey office. (*Id.* ¶ 36.) According to Plaintiff, Barraclough attacked Plaintiff's character and criticized him through the interview. (*Id.* ¶¶ 37-43.) Then, on October 22, 2019, BPE issued a written final warning to Plaintiff based on performance deficiencies from late 2018 through October 2019. (*Id.* ¶ 56.) Plaintiff alleges that this Final Warning was issued at BPE's Morristown, New Jersey office. (*Id.*) Following the final warning, Plaintiff claims that he continued to endure harassment from

his supervisors and unsuccessfully sought other employment. (*Id.* ¶ 58.) Plaintiff was subsequently terminated from his employment with BPE on February 3, 2020. (*Id.* ¶ 60.) According to Plaintiff, Starkie informed him of his termination while at the Rutherford, New Jersey office. (*Id.* ¶ 63.)

Following his termination, Plaintiff filed this suit in the Superior Court of New Jersey, Mercer County, Law Division, alleging claims under the NJLAD for retaliatory harassment against BPE, and aiding and abetting against his supervisors, Starkie and Barraclough. Defendants subsequently removed the action to this Court. In the instant motion to dismiss, Defendants contend that (1) the NJLAD should not apply to this matter because Plaintiff was not employed in New Jersey, and (2) even if the NJLAD does apply, Plaintiff has failed to sufficiently allege claims against Defendants for retaliation and aiding and abetting under the NJLAD. In response, Plaintiff has filed a cross-motion to amend his complaint.

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a) 6 does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain

sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by Twombly and Iqbal, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust. *Id*. Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III.   DISCUSSION

#### A.  Plaintiff's Motion to Amend

At the outset, Plaintiff seeks to amend his Complaint to include additional facts connecting his contacts to the State of New Jersey to support his claim under the NJLAD. Specifically, the Amended Complaint adds the following allegations:

- Plaintiff "was employed to work in the New York office," but "worked on a semi[-]regular basis" in BPE's New Jersey offices and "attended work meetings and functions in New Jersey. (Am. Compl. ¶ 7.)

- Plaintiff "made many trips to BPE's Philadelphia office via Amtrak where he worked remotely on company business while traveling to New Jersey. (*Id.* ¶ 8.)

- Starkie participated in the Spring 2018 teleconference in which he berated Ms. de Voogd from BPE's Rutherford, New Jersey office. (*Id.* ¶ 13.)

- The "Final Warning" documenting Plaintiff's alleged poor job performance was issued "at BPE's office in Morristown, New Jersey." (*Id.* ¶ 56.)

- Starkie terminated Plaintiff while at BPE's Rutherford, New Jersey office. (*Id.* ¶ 63.)

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course either within 21 days after serving it, or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, Rule 15(a)(2) requires either the opposing party's consent or the court's leave to amend the pleadings. Fed R. Civ. P. 15(a)(2). The standard to grant a motion for leave is liberal, as Rule 15(a)(2) reads, "the court should freely give leave when justice so requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]his mandate is to be heeded."). Generally, there is a presumption in allowing the moving party to amend its pleadings. *See Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002). Still, "the decision to grant or deny leave to amend under Rule 15(a) is committed to the sound discretion of the district court." *257 Elizabeth Ave., LLC. v. Cont'l Cas. Co.*, No. 12-4091, 2016 WL 452311 (D.N.J. Feb. 5, 2016) (quoting *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993) (internal quotations omitted)). Thus, where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party[,]" the Court retains the discretion to deny a request to amend. *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107, 116 (3rd Cir. 2003).

Here, there is no allegation that Plaintiff has demonstrated undue delay, bad faith, or

dilatory motives, or that Defendants will be prejudiced by the filing of the Amended Complaint. Rather, Defendants argue that Plaintiff's motion to amend should be denied as futile because, they argue, the proposed amendments do not address the Complaint's purported failure to allege that Plaintiff was employed in New Jersey, and thereby, covered by the protections of the NJLAD. (Reply., at 2–3.)  However, because the Amended Complaint includes additional factual allegations needed for the Court to adequately assess whether Plaintiff is protected by the NJLAD, I will grant the motion to amend and direct the Clerk of the Court to file the Amended Complaint. I turn, next, to Defendants' Motion to Dismiss.

### B. Motion to Dismiss

While arguing that Plaintiff has failed to allege the elements of a NJLAD retaliatory claim, Defendants primarily move to dismiss the Complaint on the basis that the NJLAD, as a matter of law, does not apply to the conduct underlying Plaintiff's claims.  Specifically, Defendants explain that Plaintiff was not employed in New Jersey, and that he has not alleged any discriminatory conduct that took place in New Jersey.  (Moving Br., at 8–9.)  In support of their argument, Defendants cite to several cases from courts in this District that have dismissed NJLAD claims where the plaintiff was not employed in New Jersey.  (*See* Moving Br., at 8–9); *see, e.g.*, *Diana v. AEX Grp.*, No. 11-1838, 2011 WL 4005333, at *2 (D.N.J. Sept. 7, 2011) ("New Jersey courts have consistently applied the law of the State where employment occurred to claims of workplace discrimination; more specifically, New Jersey courts have only applied the NJLAD if the plaintiff was employed in New Jersey."); *Satz v. Taipina*, No. 01-5921, 2003 WL 22207205, at *16 (D.N.J. Apr. 15, 2003) ("New Jersey courts have consistently applied the law of the state of employment to workplace claims and have therefore only applied the NJLAD if the plaintiff worked in New Jersey."), *aff'd*, 122 F. App'x 598 (3d Cir. 2005); *Buccilli v. Timby, Brown & Timby*, 283 N.J.

8

Super. 6, 10 (App. Div. 1995). Defendants argue that because Plaintiff is a New York resident, and was employed by a wholly owned subsidiary of a Connecticut corporation to work out of BPE's New York office, Plaintiff plainly cannot avail himself of the protections of the NJLAD.

Plaintiff argues, however, that under the circumstances described in the Amended Complaint, the NJLAD applies to him. Plaintiff is correct that the New Jersey Appellate Division more recently has held that an out-of-state plaintiff may, in limited circumstances, be able to assert a NJLAD claim against a New Jersey defendant. *Calabotta v. Phibro Animal Health Corporation*, 460 N.J. Super. 38 (App. Div. 2019). There, the plaintiff was employed in Illinois by a subsidiary of a New Jersey corporation. *Id.* at 47. Plaintiff was informed that the corporation was downsizing and that his responsibilities were being reduced. *Id.* at 48. As such, plaintiff applied for a new position in the New Jersey offices of the corporation. *Id.* After plaintiff was not chosen for the New Jersey position and was later terminated by the corporation, he brought NJLAD claims against the corporation and two supervisors, alleging that they discriminated against him "on account of his association with [his wife,] a person with a disability," in failing to consider him for the promotion and terminating his employment. *Id.* at 49–50. The trial court dismissed the plaintiff's complaint, holding that "[t]he NJLAD does not apply to employees whose employment is based outside of New Jersey." *Id.* at 51. The Appellate Division reversed because it was "persuaded that [the New Jersey] Legislature has expressed an intention to allow certain nonresident plaintiffs to receive the benefits and protections of the NJLAD." *Id.* at 60. Specifically, the court examined the text and legislative history of the NJLAD and found that it did not include any "expression of legislative intent to limit the statute's protections to job applicants who live in New Jersey, or to those employees who perform all of their employment functions in New Jersey." *Id.* at 64.

In that regard, *Calabotta* set forth a framework for determining if an out-of-state plaintiff may proceed with an NJLAD claim based on New Jersey's most significant relationship test for resolving conflicts of laws.  First, a court must determine whether there is a conflict of laws between the law of the forum state and the laws of any other interested states.  *Id.* at 218.  A conflict results only when application of the different state laws would lead to a different outcome in the case.  *Id.* at 54.  If no conflict exists between the two state laws, then the laws of the forum state are applied.  *Id.* at 55.  However, where a conflict does exist, courts apply "the most significant relationship" test as outlined under Sections 6, 145, and 146 of the Restatement (Second) of Conflicts of Laws.  *Id.* at 55–56; *see also Walters v. Safelite Fulfillment, Inc.*, No. 18-11111 (RMB/MJS), 2021 WL 1712261, at *5 (D.N.J. April 30, 2021).

Applying that framework, and noting that discovery had not yet been completed, the *Calabotta* court determined that the plaintiff stated a valid claim for failure-to-promote under the NJLAD.  Specifically, the court was "heavily influenced by the fact that the new position sought by plaintiff and other potential applications was going to be located in [New Jersey], where the defendant company Phibro is based."  *Id.* at 70.  The court, however, remanded for further fact-finding as to whether the NJLAD applied to plaintiff's wrongful termination claim.  *Id.* at 72–74.  That claim, the court highlighted, was more significantly tied to Illinois, as that was the place of injury, and the corporation may have reasonably expected Illinois law to apply to that claim.  *Id.* at 73.  However, the court noted that "if plaintiff can establish that the company's decision to fire him was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale."  *Id.*

Since *Calabotta*, two courts in this District have considered the question of when an out-of-state plaintiff may proceed with a claim under the NJLAD.  In *Walters v. Safelite Fulfillment,*

*Inc. ("Walters I")*, the plaintiff was a resident of Connecticut who was employed at defendant's Cherry Hill location for a period of time before transferring to a Connecticut location. No. 18-11111, 2019 WL 7343481, at *1 (D.N.J. Dec. 31, 2019). Plaintiff alleged that he was terminated in retaliation for objecting to the treatment of a female employee at the New Jersey location. *Id.* at *2, 5. Applying *Calabotta*, at the motion to dismiss stage, the court found that, because plaintiff voiced those objections while employed in New Jersey, he had "allege[d] sufficient contacts to the state of New Jersey for his NJLAD . . . claims [to] survive a motion to dismiss." *Id.* at *5. On summary judgment, however, the court applied sections 6, 145, and 146 of the Restatement and determined "that Connecticut is the state with the most significant relationship to Plaintiff's dispute." *Walters v. Safelite Fulfillment, Inc. ("Walters II")*, No. 18-1111, 2021 WL 1712261, at *8 (D.N.J. Apr. 30, 2021).

The court in *Rampersad v. Dow Jones & Co., Inc.*, similarly applied the principles set forth in *Calabotta*. No. 19-11733, 2020 WL 529212 (D.N.J. Jan. 30, 2020). There, the plaintiff worked remotely for the corporate defendant from her home in Florida. *Id.* at *1. In that position, plaintiff reported to a manger who was based in the corporate defendant's Princeton, New Jersey office. *Id.* From 2017 to 2018, plaintiff took several periods of short-term disability and leave under the Family Medical Leave Act ("FMLA"). *Id.* In 2019, the *Rampersad* plaintiff was informed that her remote position was being converted to an "in-office" position at the Princeton, New Jersey office. *Id.* Plaintiff was informed that, unless she chose to relocate to New Jersey, she would be terminated. *Id.* Following her termination, plaintiff alleged that defendant discriminated against her in violation of the NJLAD. *Id.* The *Rampersad* court, however, found that "a more developed factual record [was] necessary to determine whether the *Calabotta* choice-of-law principles justify applying the NJLAD to Plaintiff's claims. *Id.* at *4. Accordingly, the court denied the defendants'

motion to dismiss. *Id.*

Reviewing these cases, what remains unclear, however, is how federal courts should apply *Calabotta* within the federal pleading regime. While *Calabotta* was decided on a motion to dismiss, New Jersey's dismissal standard pursuant to Rule 4:6-2(e) stands in contrast to its federal counterpart, *i.e.*, Rule 12(b)(6), set forth by the U.S. Supreme Court in *Twombly* and *Iqbal*. *See Moe v. Twp. of Woodbridge*, No. 19-14139, 2020 WL 6156756, at *2 n.4 (D.N.J. Oct. 20, 2020)("The New Jersey Court Rule 4:6-2(e) standard articulated by Plaintiffs is rooted in 'pre-*Twombly* and *Iqbal* jurisprudence'" (citing *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 500 (D.N.J. 2012))). That is, a federal plaintiff must plausibly allege that he or she is entitled to relief.

Indeed, prior to *Calabotta*, New Jersey district courts—and the Third Circuit—routinely dismissed NJLAD claims where the plaintiff was not employed in New Jersey. *See, e.g.*, *Wilson v. JPMorgan Chase*, No. 18-13789, 2019 WL 4072933, at *5 (D.N.J. Aug. 28, 2019) ("[T]he Court finds that Plaintiff's claims may not be brought under the LAD, as Plaintiff worked exclusively in New York."); *Marinac v. Mondelez Int'l, Inc.*, No. 14-7606, 2019 WL 3183659, at *2 (D.N.J. July 12, 2019) ("Even if Defendants' decision to investigate Plaintiff occurred in New Jersey, that action alone does not support an NJLAD claim for a New York employee employed in New York."); *Arcut v. Ross Univ. Sch. of Veterinary Medicine*, No. 10-1681, 2012 WL 5867148, at *12 (D.N.J. Nov. 19, 2012) ("New Jersey courts have consistently applied the NJLAD only if the claimant was discriminated against during employment in the state."); *Satz*, 2003 WL 22207205, at *16–17 (finding that plaintiff did not allege sufficient connection to New Jersey where "plaintiff's claims [were] about a an allegedly wrongful transfer in Pennsylvania and an allegedly wrongful termination in Delaware"). *Calabotta*, however, applied choice-of-law principles to

determine whether a plaintiff should be protected under the NJLAD, which created an exception to that general and bright line rule: an out-of-state plaintiff may be entitled to assert a claim under the NJLAD if he or she can demonstrate that New Jersey has the most significant relationship to his or her claim. *See Calabotta*, 460 N.J. Super. at 53–59.

When balancing the concerns raised by *Calabotta* and applying the plausibility standard under Rule 12(b)(6), this Court holds that an out-of-state plaintiff must plausibly allege, prior to discovery, some facts to show that he or she is entitled, as a threshold matter, to the protection of the NJLAD. In other words, to survive a motion to dismiss under Rule 12(b)(6), an out-of-state plaintiff must allege that New Jersey has the most significant relationship to his claim. *See id.*; *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)). Indeed, requiring a plaintiff to allege a plausible connection to New Jersey at the motion to dismiss stage aligns with the purpose of Rule 12(b)(6)—to permit a defendant to test the legal sufficiency of a plaintiff's claim before being subject to discovery. *See Neitzke v. Williams*, 490 U.S. 319, (1989) (observing that the purpose of a motion to dismiss under Rule 12(b)(6) is to "streamline litigation by dispensing with needless discovery and factfinding"); *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) ("A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore may be decided on its face without extensive factual development."). Importantly, however, the plaintiff need not allege chapter and verse of every choice-of-law factor, but rather, sufficient facts for the court to determine, at the dismissal stage, that the plaintiff may seek relief under the NJLAD. To be clear, this does not preclude a defendant from disputing these allegations at a later stage of the litigation.

Applying this standard, I turn to the question of whether Plaintiff has plausibly alleged that

13

New Jersey has the most significant relationship to his NJLAD claim.  Defendants argue that Plaintiff's allegations lack any direct connection to New Jersey employment; that is, Defendants maintain that Plaintiff cannot avail himself of the protections afforded by the NJLAD because he is a New York resident who was employed in New York by a Connecticut corporation and, further, that his "intermittent connections with and occasional trips to New Jersey did not 'transform his place of employment.'"  (Defs. Reply, at 6.)  Plaintiff, however, contends that the Amended Complaint sets forth significant factual connections to New Jersey to warrant application of the NJLAD.  (Pls. Opp., at 9.)  Neither party, however, addresses the necessary factors of the Restatement's most-significant relationship test.  The Court's independent analysis of those factors, however, reveals that Plaintiff has not alleged a sufficient connection to New Jersey.

Applying the Restatement's most-significant relationship test, the Court's analysis begins with a determination of whether there is, in fact, a conflict of laws.  From the Court's reading of the Complaint, it appears that at issue here are the laws of New York and New Jersey.  Both the NJLAD and the New York State Human Rights Law ("NYSHRL") prohibit employers from retaliating against employees for engaging in protected activities, such as opposing "any practices forbidden" by the statutes.  *See*  N.J.S.A. §10:5-12(d) ("It shall be an unlawful employment practice . . . "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act . . . ."); N.Y. Exec. Law § 296(1)(e) (making it illegal "[f]or any employer . . . to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article because he or she has filed a complaint, testified or assisted in any proceeding under this article").  Further, both the NJLAD and NYSHRL provide for aiding and abetting liability against an individual.  *See* N.J.S.A. §10:5-12(e) ("It shall be an unlawful employment practice . . . [f]or any person whether an employer or

14

an employee or not to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."); N.Y. Exec. Law § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."). However, the statutes diverge with respect to damages. Specifically, the NJLAD provides for the recovery of punitive damages and attorney's fees, whereas, under the NYSHRL, a plaintiff cannot recover either punitive damages or attorney's fees. *See Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 464 (S.D.N.Y. 1996). Because the NJLAD and NYSHRL provide for different remedies, a conflict of law exists. *See Beebe v. N.Y. Times Co.*, 666 F. Supp. 2d 321, 330 (E.D.N.Y. 2009) (finding NJLAD and NYSHRL conflict because the NJLAD provides for attorneys' fees and punitive damages); *Robins*, 923 F. Supp. at 464 (same); *Babcock v. Sears, Roebuck & Co.*, No. L-4881-01, 005 WL 3533568, at \* (N.J. Super. Ct. App. Div. Dec. 25, 2005) ("The LAD allows an award of attorney fees to the prevailing party, and punitive damages. The [NYSHRL] does not allow either. Thus, there is a conflict of laws." (citations omitted)).

Next, I must examine whether Plaintiff has sufficiently alleged that New Jersey has the "most significant relationship" to his claims. As the *Calabotta* court explained, "[t]o determine whether New Jersey has the most significant relationship, [courts] consider sections 145 and 146 [of the Restatement], which provide general principles for tort actions, as well as section 6, which outlines universal principles for choice-of-law issues." 460 N.J. Super. at 55–56 (citing *In re Accutane Litig.*, 235 N.J. at 260). First, section 146 provides that "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." *Id.* (emphasis removed) (quoting *Restatement (Second) of Conflict of Laws* § 146). Under section 145, the "[c]ontacts to

15

be taken into account" in assessing the most significant relationship include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Restatement* § 145(2). Finally, courts look to the section 6 principles which, reduced to their essence, are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 147 (2008).

At the motion to dismiss stage, I find that Plaintiff has not alleged sufficient contacts to the State of New Jersey for his NJLAD claim to proceed to discovery.[2] Under section 146, the law of New York is presumed to apply to this matter because it is the state where the injury was felt by Plaintiff, a New York resident and employee. Based on only the allegations of the Amended Complaint, it would appear that the section 145 factors would weigh in favor of applying New York law to this matter—Plaintiff was employed in New York, neither Plaintiff nor the Corporate Defendants are citizens of New Jersey, and the relationship between Plaintiff and the Corporate Defendants is centered in New York. At best, as the allegations stand now, the only section 145 factor that would weigh in favor of applying New Jersey law is the second factor, which considers the place where the conduct causing the injury occurred. Specifically, Plaintiff alleges that two retaliatory actions took place in New Jersey: (1) he was interviewed by Barraclough for a position from which he was ultimately rejected in the Morristown, New Jersey office, and (2) Starkie was

---

[2] Because the same conduct underlies Plaintiff's claims for retaliatory harassment and aiding and abetting liability against Starkie and Barraclough, I consider those claims together in assessing the Restatement factors.

at the Rutherford, New Jersey office when he informed Plaintiff of his termination.[3]  Those facts do not outweigh the significant contacts that New York has to Plaintiff's claims.

However, I note that there are several categories of information not included in the Amended Complaint that could impact the Court's analysis of the section 145 factors.  For example, the Amended Complaint does not indicate where the Senior Vice President, Chief Claims Officer position, for which he applied in September 2015, was to be located.  If that position was to be based out of the New Jersey office, the section 145 considerations may "tip in favor of [applying] New Jersey" law, as was the case in *Calabotta*.  *See* 460 N.J. Super. at 72 (finding that the "overall weight" of the section 145 considerations tipped in favor of New Jersey where New Jersey was the place "where the new position was to be located" and "where the parties' future relationship would be 'centered' upon the filling [of] the position").  Finally, the Amended Complaint fails to allege where Plaintiffs' supervisors were based or located; rather, Plaintiff only alleges that the supervisors made decisions when they were in New Jersey, not that they were based on New Jersey. Such information is critical to the Court's analysis of the section 145 factors because "if plaintiff can establish that the company's decision to fire him was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale."  *See id.* at 73.

The section 6 factors further counsel against the application of New Jersey law at this time.  First, I am not convinced that the interests of comity support application of New Jersey law.  The allegations offered connecting Plaintiff's claims to New Jersey are sparse.  Indeed, at no point in the Complaint does Plaintiff suggest that he sought employment in BPE's New Jersey offices or

---

[3]  Plaintiff highlights that certain of the discriminatory incidents that he witnessed and reported occurred in New Jersey.  However, where the discriminatory incidents occurred has limited bearing on the Court's choice of law analysis which, instead, focuses on where the conduct that caused Plaintiff's injuries occurred.

that he witnessed any discriminatory conduct while in New Jersey. Rather, Plaintiff alleges that Starkie took several teleconferences in which he allegedly made discriminatory comments from BPE's Rutherford office, that Plaintiff was interviewed by Barraclough at Defendants' Morristown office on one occasion, and that he "semi-regularly" worked at BPE's New Jersey offices. But, according to the allegations, Plaintiff's employment with BPE at all times remained in New York, and Plaintiff has not affirmatively averred that he sought any positions in New Jersey. "Mere 'occasional contact with New Jersey . . . [i]s insufficient to turn those visits into plaintiff[] being 'based' in New Jersey for employment purposes.'" *Schneider v. Sumitomo Corp. of Am.*, No. 09-5094, 2010 WL 2521774, at *2 (D.N.J. June 14, 2010); *see also Buccilli*, 283 N.J. Super. at 10–11. That Plaintiff worked in New Jersey on a "semi-regular" basis does not outweigh the interest of New York to his claims. Similarly, it appears that, as alleged, the interests of the parties favor the application of New York law as both parties would fairly expect New York law to apply to any employment discrimination dispute between Plaintiff and Defendants as Plaintiff was employed in New York, worked in Defendants' New York Office, and resided in New York.

In short, even considering Plaintiff's allegations that certain conduct underlying his retaliation and aiding and abetting claims occurred in New Jersey, application of the sections 6, 145, and 146 factors demonstrates, based upon the current complaint, that New York plausibly has the most significant relationship to this matter. However, the Court will permit Plaintiff another opportunity to amend his Amended Complaint because, as discussed above, additional factual allegations may potentially tip the scale in favor of New Jersey.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to Amend is **GRANTED** and Defendants' Motion to Dismiss is **GRANTED**. Plaintiff is given leave to file a second amended

complaint to cure the deficiencies outlined in this Opinion within 21 days from the date of the accompanying Order.  An appropriate Order accompanies this Opinion.

DATED: October 8, 2021                                    /s/ Freda L. Wolfson
                                                          Freda L. Wolfson
                                                          U.S. Chief District Judge